UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENSINGTON RESEARCH & RECOVERY, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 08 C 1250 |
| v. | ) | Judge Joan B. Gottschall |
| UNITED STATES OF AMERICA DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on cross-motions for summary judgment. For the reasons stated below, the plaintiff's motion is denied and the defendant's motion is granted.

### I. BACKGROUND[1]

The Federal Housing Administration ("FHA"), which is part of the Department of

---

[1] The facts are taken from the parties' Rule 56.1 statements of material fact and are undisputed unless otherwise noted. As a general matter, each party raises objections to the other's Rule 56.1 submissions. First, Kensington argues that HUD's statements of fact must be stricken because they rely on "unsworn declarations." The argument is frivolous. *See* 28 U.S.C. § 1746 (providing that unsworn declarations containing the language used in the instant declarations should be treated "with like force and effect" to a sworn declaration or affidavit). Second, Kensington's assertions that the declarants lack the requisite knowledge and expertise to discuss certain topics are largely without merit. Both declarants have worked for HUD for many years, have demonstrated knowledge of HUD's refund disbursement process and use of the HUD-27050-B form, and offer observations that are within their personal knowledge and experience. Nevertheless, the court will not consider certain statements that constitute legal conclusions or that do not relate to HUD business. *See, e.g.*, Def.'s Statement of Material Facts ¶ 13 (regarding reliability of powers of attorney); *id.* ¶ 17 (discussing tracer fees). Third, where either party has not complied with Local Rule 56.1 or this court's standing order, by, for example, not admitting or denying statements or offering inference or argument, the court has deemed certain statements of fact admitted and stricken superfluous matter. This includes striking parts of plaintiff's Reply to Defendant's Response to Plaintiff's Local Rule 56.1 Statement of Material Facts and Additional Material Facts (doc. no. 40) because, although a response to additional facts is authorized by the local rules, a reply is not. *See* L.R. 56.1; *Montgomery v. City of Harvey*, No. 07 C 4117, 2008 WL 4442599, at *3 (N.D. Ill. Sept. 29, 2008).

Housing and Urban Development ("HUD"), provides FHA-insured mortgages to homeowners. When the mortgage insurance is terminated early via loan payoff or refinancing, some of the mortgage insurance premiums ("MIPs") may be refunded to the homeowner.[2] HUD issues the refund automatically when the data it receives from the homeowner's lending institution matches HUD's records. However, if there is a discrepancy between the lender's and HUD's data, HUD attempts to confirm the data with the homeowner by mailing an Application for Premium Refund or Distributive Share Payment form, also known as a HUD-27050-B form. The HUD-27050-B form is partially completed by HUD with personal, mortgage, and MIP refund information from HUD records merged into the form template along with several agency administrative codes. The homeowner completes the form, including his or her social security number, telephone number, and a current address to which the refund should be mailed. The completed form must be signed, notarized and returned to HUD with proof of ownership of the mortgaged property.

Eileen Trentz ("Trentz") owned 600 W. 43rd Street in Chicago, Illinois. She obtained an FHA-insured mortgage on the property and paid MIPs to HUD. Trentz was due a MIP refund. HUD mailed Trentz an individualized HUD-27050-B form but received no response. On December 22, 2006, Kensington Research & Recovery ("Kensington") attempted to obtain Trentz's HUD-27050-B. It made a request for information from the Department of Housing and Urban Development ("HUD") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"). It included with its request a copy of a form titled "Limited Power of Attorney," signed by Trentz who now lives in Hammond, Indiana.[3] The Limited Power of Attorney

---

[2] 24 C.F.R. §§ 203.283-284, §§ 203.420-427.
[3] HUD does not dispute that Kensington has a limited power of attorney form that, on its face, purports to be signed by Trentz. However, it disputes the legal significance of this, denying that the form "is sufficient to establish that such a request was authorized by or made on behalf of

provided that Kensington was authorized to obtain records from HUD, including the HUD-27050-B form, on Trentz's behalf.

On April 30, 2007, HUD's FOIA Division denied the FOIA request for Trentz's HUD-27050-B form. It based its decision on Exemption 2 of the FOIA, 5 U.S.C. § 552(b)(2), which exempts from disclosure material "related solely to the internal personnel rules and practices of the agency." It stated that HUD sends HUD-27050-B forms only to homeowners to avoid the possibility of misuse by third-parties. Kensington appealed the denial of its FOIA request on May 29, 2007. On October 11, 2007, HUD found the record insufficient to determine that Exemption 2 applied and remanded the request to its FOIA Division "to either provide [Kensington] with the requested document or with a valid legal basis for withholding it." Pl.'s Compendium of Exs., Ex. 7.

On October 31, 2007, the FOIA request was again denied. HUD stated that "the National Housing Act and implementing regulations required that unearned mortgage insurance premium charges paid by the mortgagor be refunded to the borrower" and that "[r]elease of the [HUD-27050-B form] to third parties . . . creates a significant risk that HUD regulations requiring refund of unearned premium will be circumvented." *Id.* Ex. 8. Kensington appealed for the second time on November 30, 2007. HUD denied the appeal on January 8, 2008.

On February 28, 2008, Kensington filed this lawsuit. It alleges that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B) because the action is to enforce a request under the FOIA. Compl. ¶ 3. In its prayer for relief, Kensington seeks an order enjoining HUD from withholding the HUD-27050-B form pursuant to the FOIA, requiring production of Trentz's HUD-27050-B form, and also seeks a mandatory injunction requiring

---

FHA homeowner Eileen Trentz." Def.'s Resp. to Pl.'s L.R. 56.1(a)(3) Statement of Material Facts ¶ 6.

HUD to interact with Kensington as it would for homeowner principals when the Plaintiff submits a power of attorney. *See* Compl. at 4-5.

## II. ANALYSIS

Each party asserts that there is an absence of material fact and that it is entitled to summary judgment.

**A.     Legal Standard**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the facts and any inferences to be drawn from them in the light most favorable to the non-moving party. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). "On cross-motions for summary judgment, [a court] construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Rd. Joint Venture*, 542 F.3d at 1124.

In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. In response, the non-moving party cannot rest on the pleadings, but must designate specific

material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 479 (7th Cir. 1996) (quoting *Buckley Dement, Inc. v. Travelers Plan Adm'rs of Ill., Inc.*, 39 F.3d 784, 787 (7th Cir. 1994) and *Celotex Corp.*, 477 U.S. at 322).

**B.      Arguments**

The parties, for the most part, do not dispute the material facts regarding the HUD-27050-B form, Trentz's entitlement to a MIPs refund, or the procedural posture of Kensington's FOIA request. The parties do dispute: (1) whether HUD had any "agency record" to disclose; (2) whether HUD had an obligation to recognize Kensington as attorney-in-fact; and (3) whether Exemption 2 prevents disclosure of Trentz's refund application.[4]

   1.      *Whether HUD Had Any Agency Record to Disclose*

HUD argues that Kensington cannot prevail on summary judgment because it has failed to produce evidence suggesting that the record it seeks actually exists. A district court has jurisdiction to ensure private access to requested materials "upon a showing that an agency (1) 'improperly'; (2) 'withheld' (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (citing 5 U.S.C. § 552(a)(4)(B)). HUD argues that no "agency record" was withheld because HUD does not maintain a copy of the HUD-27050-B form after it creates it and mails it to the homeowner.

Kensington argues, citing to Justice Brennan's concurrence and dissent in *Kissinger*, 445 U.S. at 159, that HUD cannot avoid disclosure by saying it no longer has the document in its

---

[4] Each party makes essentially the same argument in support of its own motion and in opposition to the other side's motion. Consequently, the court considers the cross-motions together.

control. However, unlike the agency in *Kissinger* that had disposed of documents formerly in its control, HUD is not claiming that it does not have control of the information requested. Rather, it is arguing that it is not required to create a facsimile of the document to respond to a FOIA request. In support, it cites *Smilde v. Rossotti*, No. 99 C 5758, 2002 WL 849797 (N.D. Ill. 2002). Unlike the case at bar, the *Smilde* court was not dealing with a request for a specific document but with requests for "abstract information" and "answers to pointed questions" about agency operating procedures. *Id.* at *3. The case is, therefore, factually inapposite. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), the case upon which *Smilde* relies, is similarly inapposite. In *Sears, Roebuck & Co.*, the Court held that the agency was not required to "produce or create" explanatory material, specifically written legal opinions, that it otherwise would not have created. *Id.* at 161. However, in this case, Kensington is not asking for a document that would have no purpose other than as a response to its FOIA request; indeed, HUD admits that it has created multiple HUD-27050-B forms for Trentz in the past. The *de minimis* time requirement for creation of the document, as well as the fact that the form has previously been created in the exact format requested, distinguishes this case from those cited by HUD.

Significantly, HUD does not argue that recreating the HUD-27050-B form would be time or labor intensive, or would cause any financial hardship for the agency. The record suggests that HUD generates thousands, if not tens of thousands, of HUD-27050-B forms each year. *See* Def.'s Resp. to Pl.'s LR 56.1(a)(3) Statement of Material Facts, Ex. 1 ¶¶ 4-5 (declaration of Silas C. Vaughn, Jr., Chief of the Disbursements and Customer Services Branch of the FHA stating that HUD disbursed 77,000 MIP refunds in 2008 and that 75% of refunds due are disbursed without a HUD-27050-B form). It is apparent from HUD's briefs that the component parts of Trentz's HUD-27050-B form continue to exist, likely stored in various electronic databases

maintained by HUD and its affiliates. Given the vast number of disbursements and the high proportion that require a HUD-27050-B form, it seems highly unlikely that the recreation of a personalized HUD-27050-B form requires more than a few strokes on a keyboard and HUD presents no evidence that creating "a facsimile" would place an undue burden on it.

Although HUD did not save the data in the precise format that was transmitted to Trentz, the *de minimis* outlay of time, energy, and resources required to recreate a HUD-27050-B form that previously existed does not constitute creation of a new record. *See Schladetsch v. U.S. Dep't of HUD*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000) (holding that the FOIA requires an agency to produce electronically-stored information in disparate databases, even where the data has never been compiled in the manner requested, because "extracting and compiling the data does not amount to the creation of a new record"). HUD's argument that the HUD-27050-B form is not an "agency record" is rejected. Consequently, the argument is not sufficient to allow HUD to prevail on its motion for summary judgment or to defeat Kensington's motion on this basis.

2.  *Kensington's Power of Attorney*

Kensington argues that HUD should have recognized its power of attorney and provided the HUD-27050-B form to Kensington as HUD would have to Trentz herself. HUD disputes whether the documents submitted to it were sufficient to demonstrate that Kensington was acting on Trentz's behalf, but its primary argument is that, as a federal agency, it is under no obligation to honor even a valid power of attorney.

As an initial matter, the court must determine whether the existence of a power of attorney is relevant to a FOIA action. HUD contends that it is not relevant because the FOIA deals with public disclosure and not with disclosure to specific authorized persons (absent certain

7

exceptions inapplicable here). On the other hand, Kensington suggests that it is relevant, arguing that HUD should produce the document requested under the FOIA because Kensington has a power of attorney from the homeowner.

The FOIA's "sole concern is what must be made public or not made public." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 772; *see* 5 U.S.C. § 552(a)(3) (requiring that agencies must, on proper request, make records "promptly available to any person"). If the HUD-27050-B form is accessible under the FOIA as Kensington argues, then any person may obtain a copy upon request, whether or not they have a power of attorney from the homeowner. The history of Kensington's requests to HUD in this case demonstrates that the two issues are separate and that it was only because HUD refused to honor Kensington's power of attorney that the need to invoke the FOIA arose. HUD *first* refused to provide the HUD-27050-B form to Kensington because Kensington was not the homeowner and *then* suggested that Kensington attempt to obtain the document through the FOIA as would a member of the general public. *See* Compl. Ex. B (email from Kensington to HUD stating that "[t]he refund department suggested we direct this request [for Trentz's HUD-27050-B form] to HUD's FOIA department"). Thus, as HUD argues, the existence of a power of attorney is irrelevant to the merits of Kensington's FOIA request, and *vice versa*.

Kensington alleges subject matter jurisdiction solely pursuant to the FOIA and does not invoke the court's supplemental jurisdiction over state claims or under the declaratory judgment act, 28 U.S.C. § 2201; yet, the court has found that the existence of a power of attorney is irrelevant to its FOIA claim. Moreover, Kensington points to nothing in the Administrative Procedure Act or HUD's statutory or regulatory mandate that requires that HUD recognize a homeowner representative who is not a licensed attorney. *See* 5 U.S.C. § 500(d)(1) (stating that

the APA does not "grant or deny to an individual who is not qualified as [specified] the right to appear for or represent a person before an agency or in an agency proceeding"). And it fails to explain why an Illinois statute, which does not appear to mandate that any person – let alone the federal government – recognize a power of attorney, controls in an action brought under the FOIA in regard to a power of attorney executed in Indiana. *See* 755 Ill. Comp. Stat. 45/2-1 (outlining the purposes of the Act, including to "better protect . . . third parties who rely in good faith on the agent so that reliance will be assured"); *id.* 45/2-8 (limiting liability for reliance on a power of attorney). The court therefore turns to the stated basis for Kensington's lawsuit and for HUD's denial of access to the HUD-27050-B form: the FOIA.

3.  *FOIA Exemption 2*

The FOIA aims to foster disclosure, not secrecy. *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Therefore, a court's obligation is "'to construe FOIA exemptions narrowly in favor of disclosure.'" *Id.* (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993)). The burden lies with the government to justify its decision to withhold a requested document. *Id.* at 836. On summary judgment, the government meets this burden if "'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Id.* (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)).

"Exemption 2 encompasses two distinct categories of information: (i) that related to internal agency matters of a relatively trivial nature [known as 'low 2'], and (ii) that related to more substantial internal agency matters, the disclosure of which would enable persons to circumvent a legal requirement [known as 'high 2']." Federal Administrative Procedure

9

Sourcebook 681 (William F. Funk et al. eds., 4th ed. 2008).  HUD asserts that Trentz's HUD-27050-B form is exempt from disclosure to the public as "high 2" matter because it relates "solely to the internal personnel rules and practices of an agency[.]"  5 U.S.C. § 552(b)(2).  Kensington argues that Exemption 2 is inapplicable because the HUD-27050-B form does not relate to internal matters.  It relies primarily on cases that interpret *Department of the Air Force v. Rose*, 425 U.S. 352 (1976), where the U.S. Supreme Court adopted the narrow purpose set forth in the Senate Report on Exemption 2.  *Id.* at 363-64.  However, Kensington's arguments ignore that *Rose* did not reach the issue of whether Exemption 2 could also protect documents where disclosure raises concerns regarding "circumvention of agency regulations."  *Id.* at 369.

The leading case on Exemption 2 is *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc).  The court in *Crooker*, as a matter of first impression, resolved the question left undecided in *Rose* of whether Exemption 2 permits a federal agency to withhold documents whose disclosure may risk circumvention of agency regulations.  *Id.* at 1052-53, 1066.  It held that Exemption 2 applies where "a document for which disclosure is sought meets the test of 'predominant internality,' and [where] disclosure significantly risks circumvention of agency regulations or statutes[.]"  *Id.* at 1074.  Unfortunately, Kensington relies primarily on cases and secondary materials that pre-date *Crooker* and that therefore rest upon an overly narrow interpretation of the scope of Exemption 2.[5]  The Seventh Circuit has adopted the *Crooker* analysis and test.  *See Kaganove v. EPA*, 856 F.2d 884, 889 (7th Cir. 1988) (stating that "we believe that *Crooker* accurately expresses congressional intentions").  Therefore, the court applies the *Crooker* two-part test to the facts at bar.

---

[5] Kensington also cites two unpublished cases that post-date *Crooker*, but provides non-standard citations from a treatise and no courtesy copies, thereby rendering the cases inaccessible to the court.

First, the parties dispute whether the HUD-27050-B form meets the test of "predominant internality." Kensington relies on a very literal reading of § 552(b)(2) to cover only "rules and practices" arguing that "[i]t is not the rule or procedure that is sought to be disclosed, but rather the underlying document that [HUD] admits is otherwise transmitted to individual homeowners." Pl.'s Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J. at 4. Case law does not support such a narrow reading of § 552(b)(2) where "the statute provides that matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990) (citing *Rose*, 425 U.S. at 369). Rather, materials may be considered "related" where "they bear upon, or cast light upon, [agency] practices." *Id.* at 796.

The HUD-27050-B form is partially completed by HUD with personal, mortgage, and MIP refund information from HUD records merged into the form template along with several agency administrative codes. Silas C. Vaughn, Chief of the Disbursements and Customer Services Branch in the FHA, states that the forms are "created for mailing to the homeowner so that the homeowner's return of the form will confirm HUD's proper disposition of the refund." Def.'s L.R. 56.1 Statement of Material Facts, Ex. 2 ¶ 9. Thus, the form functions like a coupon or voucher for a MIPs refund. Such a document is related to the rules and practices of HUD in that it is a mechanism by which HUD fulfils its statutory mandate to refund MIPs monies to eligible homeowners. Moreover, notwithstanding the fact that the document is mailed to homeowners, a HUD-27050-B form meets the definition of an internal record in that it "does not purport to regulate activities among members of the public [or] set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public." *See Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 5 (D.C. Cir. 1979) (discussing disclosure of a manual used by U.S. Marshals), *overruled on other grounds by Crooker*, 670 F.2d at 1074

11

n.60 (rejecting *Cox*'s suggestion that the courts are to decide which disclosures are in the public interest)).[6] Thus, the first part of the *Crooker* test is satisfied.

Second, the parties dispute whether disclosure of the HUD-27050-B form risks circumvention of agency regulations or statutes. HUD's regulations provide that it "shall provide for the refund [of MIPs] to the mortgagor of a portion of the unearned MIP paid . . . ." 24 C.F.R. § 203.283. The regulations further state that HUD shall not distribute a refund more than six years after it "first transmitted written notification of eligibility to the last known address of the mortgagor. . . ." § 203.427. HUD argues that it uses the HUD-27050-B form only to further its duty to ensure that refunds are paid properly and that the HUD-27050-B form helps the agency to authenticate the identity of the mortgagor, the entitlement to the refund, and the address to which a refund check should be mailed.

HUD puts forth evidence, in the form of uncontroverted declarations, demonstrating that disclosure to third parties presents a risk to this statutory and regulatory duty. Specifically, because the HUD-27050-B form functions like a coupon or application form intended solely for use by the eligible homeowner, public access to the HUD-27050-B form threatens to undermine the operational usefulness of the HUD-27050-B. The HUD-27050-B form therefore serves an important gatekeeping function. Typically, a HUD-27050-B form is mailed only to the address on file for the homeowner for completion; release under the FOIA would make it available to

---

[6] Kensington attempts to counter the "internal" nature of the document by arguing that it contains information of great public interest. However, the nature of the information on the form is not at issue here. Indeed, HUD admits that, as the result of a previous FOIA action, it makes available to the public, on a monthly basis, a list of refunds that remain unpaid for two years or more, including the name of the mortgagor, the FHA case number, the mortgaged property address, the amount of MIP refund due, the mortgaged property address, and the amount, interest rate and termination date of the mortgage. But in this case, Kensington does not seek information about HUD's refunds generally or even seek the information specifically contained on the HUD-27050-B form. Rather, it seeks the actual HUD-27050-B form because it enables the holder to apply for a MIPs refund for the specified homeowner.

any person who requested it which would increase the likelihood of fraudulent claims for MIP refunds because the requester would have access to the same application form as is issued to the eligible homeowner to allow him or her to apply for a MIP refund. Public release of the HUD-27050-B form would increase the likelihood of fraud, render the form operationally useless to authenticate refund data, and compromise HUD's ability to effectuate its regulatory objective of refunding MIP monies to eligible homeowners. *Cf. Dirksen v. U.S. Dep't of Health & Human Servs.*, 803 F.2d 1456 (9th Cir. 1986) (finding exempt from disclosure certain Medicare guidelines because they were "an internal claims processing blueprint," which served an auditing function that would be useless if the content became widely known).

Although Kensington denies that any safeguard on distribution of the HUD-27050-B forms is necessary or appropriate, it produces no evidence to controvert the admissible declarations from HUD staff describing past frauds that allow for an inference to the contrary. Kensington argues that disclosing the forms would further HUD's mission to disburse funds, not frustrate it. However, this argument presupposes that the form is sent to an authorized representative of the eligible homeowner rather than broadly disseminated to the public as required by the FOIA. It is certainly not unreasonable to assume that, if the partially-completed HUD-27050-B forms were publicly available, certain unscrupulous people might try to claim the MIP refunds by making use of the HUD-27050-B forms improperly. Kensington says such conclusions and concerns are illogical, but provides no evidence to rebut HUD's declarations. It fails to refute HUD's evidence regarding the dangers inherent in public release of the HUD-27050-B form and its arguments are insufficient to prove that the matter should be disclosed or to defeat HUD's motion for summary judgment on the applicability of § 552(b)(2).

The court concludes that the HUD-27050-B form is exempt from disclosure as "high 2"

matter and that no information contained on it may be segregated and disclosed as the information is inextricably intertwined with the internal function of the document.

### III. CONCLUSION

The court concludes that the HUD-27050-B form is "high 2" matter, exempt from disclosure under 5 U.S.C. § 552(b)(2). Consequently, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 8, 2009